# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO FUENTES and SOCORRO FUENTES,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, a public entity; SAN DIEGO POLICE DEPARTMENT, a public entity; and SAN DIEGO POLICE DEPARTMENT OFFICER MEISELMEN, individually and in his official capacity,<br><br>Defendants. | Case No.: 3:16-cv-02871-BEN-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

Plaintiffs Alfredo Fuentes and Socorro Fuentes, husband and wife, bring this action for damages and injunctive relief based on the shooting death of their family pet, Grizzly, a seven-year-old mixed breed canine, by San Diego Police Department Officer Meiselmen. (Compl., ECF No. 1). Defendants City of San Diego (the "City"), San Diego Police Department ("SDPD"), and Officer Meiselmen (collectively, "Defendants") move to dismiss the complaint. (Mot., ECF No. 8). Plaintiffs oppose the motion (Opp'n, ECF No. 15), and Defendants replied (Reply, ECF No. 18).

///

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## BACKGROUND[1]

Shortly before midnight on February 21, 2016, Defendant San Diego Police Department Officer Meiselmen and/or other SDPD officers entered Plaintiffs' property to inquire whether Plaintiffs had witnessed a vehicle theft reported by Plaintiffs' neighbor, Mr. Chavira. (Compl. ¶ 2). Mr. Chavira had informed the officers that they need not question Plaintiffs at that time due to the late hour and the family dog on the property. (*Id.* ¶ 4). The officers ignored this information and multiple "Beware of Dog" signs and unlatched a secure gate to enter the fenced property. (*Id.*)

The officers pounded on the front door, but did not announce the presence of police, awaking Plaintiffs. (*Id.* ¶ 26). As Mr. Fuentes neared the front door, he heard four gunshots just outside his home. (*Id.* ¶ 27). Officer Meiselmen had fired the shots at Plaintiffs' dog, Grizzly. (*Id.* ¶ 30). Grizzly was shot at least three times. (*Id.* ¶ 30). Grizzly was known to be a friendly dog and had participated in various community events. (*Id.* ¶ 15). Upon Plaintiffs' information and belief, Grizzly never made an aggressive move towards Officer Meiselmen. (*Id.*). Mr. Fuentes eventually located his wounded dog in the backyard, but the SDPD officers refused to provide any assistance and responded to Plaintiffs' pleas for medical attention by interrogating Mr. Fuentes as to what he may have seen happen to Mr. Chavira's vehicle. (*Id.* ¶ 33). Grizzly ultimately bled to death in the backyard from his wounds. (*Id.* ¶ 30).

On November 11, 2016, Plaintiffs filed a complaint alleging (1) trespass to chattel against all Defendants, (2) conversion against Officer Meiselmen, (3) conversion against the City and SDPD, (4) violation of 42 U.S.C. § 1983 against all Defendants, (5) negligence against the City and SDPD, (6) negligence against Officer Meiselmen, and

---

[1] The Court is not making any findings of fact, but rather, summarizing the relevant allegations of the complaint for purposes of evaluating Defendants' motion to dismiss.

(7) intentional infliction of emotional distress against all Defendants. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted where the pleadings fail to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege conceivably unlawful conduct but must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Defendants raise a number of arguments challenging Plaintiffs' claims. The Court addresses these arguments in turn.

**I. Common Law Claims Against the City and SDPD**

Defendants move to dismiss four claims for relief based on common law—the first (trespass to chattel), third (conversion), fifth (negligence; government), and seventh (intentional infliction of emotional distress) claims—as alleged against the City and SDPD. The common law claims present two possible theories of liability. First, the complaint contains some allegations to suggest that Plaintiffs seek to hold the public entities directly liable on the basis of negligent training and supervision of Officer Meiselmen. Second, the complaint includes allegations that Plaintiffs seek to hold the City and SDPD vicariously liable.

Under California law, a "public entity is not liable for an injury," "[e]xcept as

3

3:16-cv-02871-BEN-JMA

otherwise provided by statute." Cal. Gov't Code § 815; *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 638 (9th Cir. 2012) ("California public entities are not subject to common law tort liability; all liability must be pursuant to statute."). Thus, to hold a public entity directly liable, a plaintiff must identify a statute that authorizes the direct claims. Here, Plaintiffs fail to allege any statutory authority to support claims for direct liability against the City and SDPD. To this extent, the claims are dismissed with leave to amend.

Although Plaintiffs' theory of direct liability fails, its theory of vicarious liability survives. California Government Code section 815.2 makes a public entity vicariously liable "for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." § 815.2. Accordingly, Plaintiffs may pursue a theory of vicarious liability against the City and SDPD. Defendants raise discretionary immunity as a defense in their Reply, but the Court will not consider this belated argument. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (stating that courts ordinarily decline to consider arguments raised for the first time in a reply brief).

Despite the Court's finding that vicarious liability is a legally viable theory in general, Plaintiffs' fifth claim for "negligence; government" fails to state a plausible claim. The fifth claim for relief is against the City and SDPD and, while its theory is somewhat unclear, part of the pleading appears to allege negligence in selection, training, retention, and supervision of Officer Meiselmen. That is, Plaintiffs seek to hold the City and SDPD vicariously liable for negligent acts of its employees and/or administrators in hiring, training, and supervising Officer Meiselmen.[2]

---

[2] Plaintiffs also allege another negligence claim—the sixth claim for relief—against Officer Meiselmen for breaching his duty of care. As noted, the City and SDPD may be

4

The California Supreme Court has permitted a plaintiff to sue a public entity for negligent hiring, retention, and supervision on the basis of vicarious liability. In *C.A. v. William S. Hart Union High School District*, the court held that the plaintiff could pursue a vicarious liability claim against a public school district for the negligence of its administrators in hiring and overseeing a guidance counselor that abused the plaintiff. 53 Cal. 4th 861 (2012). Critically, however, the court limited the viability of this type of claim to situations where the supervisory or administrative personnel had a "special relationship" with the *plaintiff. Id.* at 877. There, the administrators had a special relationship with the plaintiff, a student under their supervision, "arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel." *Id.* at 869. That special relationship "entailed a duty to take reasonable measures to protect plaintiff from injuries at the hands of others in the school environment." *Id.* at 877. But "[a]bsent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2." *Id.*

In this case, Plaintiffs have not identified a special relationship between Officer Meiselmen's supervisors and Plaintiffs. Rather, Plaintiffs generally allege that the City and/or SDPD have a duty to protect people from harm and exercise care in selection, retention, training, and supervision of their employees. However, these alleged duties do not resemble the enhanced duties imposed on school personnel that formed the basis for their special relationship with the minor plaintiff in *William S. Hart*. *See Lindsay v. Fryson*, No. 2:10-cv-02842 LKK KJM PS, 2012 WL 2683019, at *7 (E.D. Cal. July 6, 2012). Accordingly, Plaintiffs have not stated a plausible vicarious liability claim for negligent hiring, training, and supervision. The fifth claim for relief is dismissed with leave to amend.

---

vicariously liable for Officer Meiselmen's acts under California Government Code section 815.2.

## II. Conversion Claim

Defendants argue that the second claim for relief, a conversion claim against Officer Meiselmen, fails as a matter of law because Meiselmen is entitled to the privilege of self-defense. Defendants argue that a reasonable inference from Plaintiffs' allegations is that Grizzly was not friendly and that Officer Meiselmen felt threatened by the dog.

The Court disagrees. Defendants' argument asks the Court to draw inferences *against* Plaintiffs, which is improper on a motion to dismiss. The Court denies the motion to dismiss on this ground.

## III. Federal Claim Under 42 U.S.C. § 1983

The fourth claim for relief, the federal claim under 42 U.S.C. § 1983, is alleged against all Defendants. To establish § 1983 liability, a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States and that the deprivation was caused by a person acting under color of state law. 42 U.S.C. § 1983. "The killing of a dog is a destruction recognized as a seizure under the Fourth Amendment and can constitute a cognizable claim under § 1983." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) (internal citation omitted).

Defendants advance several arguments to dismiss the fourth claim. First, Defendants argue that SDPD is not a properly named Defendant in this action. The Court agrees. Section 1983 liability applies to "persons." It is beyond dispute that a local governmental unit or municipality can be sued as a "person" under section 1983. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). However, "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." *United States v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005). Plaintiffs allege that SDPD is "operated as a division and/or under the control of Defendant the City." (Compl. ¶ 18). The Court dismisses the SDPD from the § 1983 claim without leave to amend because amendment would be futile. *Albrecht v. Lund*, 845

///

6

F.2d 193, 195 (9th Cir. 1988) (leave to amend may be denied where amendment is futile), *modified on other grounds* 856 F.2d 111 (9th Cir. 1988).

With the SDPD dismissed, Defendants argue that Officer Meiselmen is entitled to qualified immunity and that the City is derivatively entitled to Officer Meiselmen's immunity. Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether an officer is entitled to qualified immunity, the court considers (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *C.V. by & through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016). Both prongs must be present for the officer to be liable; otherwise, he is entitled to immunity.

The Ninth Circuit's decision in *Hells Angels* compels this Court to deny qualified immunity at this time. In *Hells Angels*, police officers executed search warrants at two properties and had advance notice that the properties featured large and potentially dangerous dogs. Despite this knowledge, the officers failed to consider any non-lethal methods to subdue the dogs. The officers shot and killed the dogs when they entered the properties and feared the dogs would attack them.

The Ninth Circuit held that the officers violated the plaintiffs' Fourth Amendment rights by unnecessarily shooting the dogs. In finding the seizures unreasonable, the court balanced the intrusion of the seizures against the countervailing governmental interests at stake. The court found that the killing of the dogs was a severe intrusion that was not warranted by the circumstances. The officers knew dogs were present, yet failed to develop a non-lethal plan for engaging or subduing the dogs. The officers were not responding to an emergency. Although the search warrants were obtained in connection with a murder investigation, none of the plaintiffs were potential suspects.

///

The Ninth Circuit also denied the officers qualified immunity. The court found that a reasonable officer should have known that the Fourth Amendment forbids killing a person's dog when less intrusive, or less destructive, alternatives exist. As applied to the particular circumstances of the case, the court stated that a "reasonable officer should have known that to create a plan to enter the perimeter of a person's property, knowing all the while about the presence of dogs on the property, without considering a method for subduing the dogs besides killing them, would violate the Fourth Amendment." *Hells Angels*, 402 F.3d at 978.

Here, the complaint's allegations set forth a plausible claim of a Fourth Amendment violation that was clearly established at the time of the shooting. The complaint alleges that Officer Meiselmen, acting in a non-emergency situation and with advance notice of a dog on the premises, entered Plaintiffs' property and, without provocation, shot Grizzly. (*See* Compl. ¶¶ 2-4 (stating that the officers were investigating a report of a stolen car; that Plaintiffs were potential witnesses of the theft, but not suspects; and that the officers were personally warned about the dog by a neighbor and that multiple Beware of Dogs signs were posted)). The alleged facts fall squarely within the test articulated in *Hells Angels*. Considering the totality of the circumstances, the seizure was unreasonable. And the violation was clearly established law in 2016. The Ninth Circuit decided *Hell's Angels* eleven years before the events at issue, thus giving Officer Meiselmen "fair warning" that his alleged actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Therefore, Officer Meiselmen is not entitled to qualified immunity.

Finally, Defendants seek to dismiss the § 1983 claim against the City by arguing that the complaint insufficiently pleads a *Monell* claim for municipal liability. A local government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, custom, or practice of the entity is shown to be a moving force behind a violation of constitutional rights. *Monell*, 436 U.S. at 694. To establish municipal liability under *Monell*, a plaintiff must prove: "(1) that the plaintiff possessed a constitutional right of which he was

deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

The complaint adequately pleads a deprivation of Plaintiffs' Fourth Amendment rights. The question, therefore, is whether the complaint plausibly alleges that the City is responsible for the violation. It does not. Here, Plaintiffs plead only that the City has a "policy of allowing its employees to disregard the lives of families' companion animals" and that the "policies, retention, training, supervision, management, regulation, oversight, discipline, and/or review of qualifications by [the City] allow, condone, ratify, and/or afford the reckless, careless, and/or erroneous shooting of canines; and thereby allow, condone, ratify, and/or afford incompetent, unqualified, untrained, unskilled, and/or inexperienced personnel to shoot animals . . . ; foreseeably resulting in the unjustified killing of companion animals." (Compl. ¶¶ 78-79). Plaintiffs appear to seek *Monell* liability on the basis of an unlawful official policy, failure to train and supervise, and ratification.

The Court finds that Plaintiffs' *Monell* claims "lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*." *Dougherty*, 654 F.3d at 900 (internal citation omitted). Their allegations are mostly conclusory and fail to address all the elements of a *Monell* violation. For instance, a "[f]ailure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Id.* at 900 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). But the complaint lacks factual allegations about the failure to train being obvious and likely to result in a constitutional violation. The § 1983 against the City is dismissed with leave to amend. *See id.* at 900-01 (affirming dismissal of *Monell* claim where complaint lacked factual allegations supporting all elements of the claim).

///

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. The fifth claim for relief as alleged directly and vicariously against the City and SDPD is dismissed with leave to amend. The first, third, and seventh claims for relief as alleged directly against the City and SDPD are dismissed with leave to amend. The SDPD is dismissed from the § 1983 claim without leave to amend. The § 1983 claim against the City is dismissed with leave to amend.

**IT IS SO ORDERED.**

Dated: June 20, 2017

Hon. Roger T. Benitez
United States District Judge